UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DELMAR FINANCIAL COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:14-CV-147 (CEJ) |
| ) | |
| ISGN CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion to dismiss for failure to state a claim for relief, pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff has filed a response in opposition and the issues are fully briefed.

## I. Background

On December 20, 2013, plaintiff filed this action against defendants ISGN Corporation, ISGN Fulfillment Agency, LLC, ISGN Fulfillment Services, Inc., and ISGN Solutions, Inc.,[1] alleging breach of a Software License and Service Agreement ("Agreement"). See Doc. #7-1. The Agreement was entered into on August 1, 2005 between plaintiff and non-party Dynatek, a provider of mortgage automation software for retail and wholesale lenders. See Doc. #7, ¶ 6. Defendant purchased Dynatek in 2007. Id. at ¶¶ 6-7.

Plaintiff alleges that defendant breached the Agreement in 2013 when it delivered "material through Service Pack 21 that did not conform to material operational features and performance characteristics, and was not free of errors and

---

[1] On March 6, 2014, in accordance with the parties' joint stipulation for dismissal, the Court dismissed defendants ISGN Fulfillment Agency, LLC, ISGN Fulfillment Services, Inc., and ISGN Solutions, Inc., without prejudice. See Doc. #16.

defects[.]" Id. at ¶ 12.  Plaintiff alleges that these problems were "Critical Problems" as defined in the Software Maintenance Service Terms.  Id. at ¶ 7.  On October 24, 2013, a few days after discovering the defects, plaintiff alleges that it gave notice to defendant. Id. at ¶ 15.

Plaintiff further alleges that the software defects "caused the annual mortgage insurance cut-off date to be determined incorrectly and therefore resulted in an understated finance change to [plaintiff's] borrowers." Id. at ¶ 14.  Plaintiff contends that it "may have to re-purchase loans calculated with the defective software, which will result in damage to [plaintiff] that could total as much as $3.3 Million Dollars." Plaintiff also alleges that it has already paid $148,699.20 to one investor as a direct result of the Service Pack 21 defects.  Id. at ¶ 16-17.

In the instant motion, defendant argues that the complaint should be dismissed for three reasons: (1) plaintiff failed to allege sufficient facts regarding the purported defects of Service Pack 21; (2) plaintiff failed to comply with the notice and cure requirements of the Agreement; and (3) the Agreement excludes the type of damages plaintiff is seeking.

## II. Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint.  The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6)

2

does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Id. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 550 U.S. at 570. See also id. at 563 ("no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "has earned its retirement.") "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

III. Discussion

As an preliminary matter, the Agreement in this case contains a choice of law provision providing that it "shall be construed under the laws of the State of Michigan[.]" See Doc. # 1-1, Ex. 1 at ¶ 26. Because the parties do not dispute the enforceability of this provision, the Court will apply Michigan law to the underlying dispute. See Marano Enters. of Kan. v. Z-Teca Rests., 254 F.3d 753, 757 (8th Cir. 2001) (forum selection causes are *prima facie* valid and should be enforced unless enforcement would be unreasonable and unjust).

Defendant first argues that plaintiff's complaint does not allege a valid claim for breach of contract. "Under Michigan law, the elements of a breach of contract claim are the following: (1) a contract existed between the parties, (2) the terms of the contract required performance of certain actions, (3) a party breached the contract,

3

and (4) the breach caused the other party injury." Green Leaf Nursery, Inc. v. Kmart Corp., 485 F.Supp. 2d 815, 818 (E.D. Mich. May 3, 2007).

Defendant argues that plaintiff has not alleged enough factual detail to satisfy the third element because plaintiff did not allege facts "regarding the nature, delivery, installation, or purported defect [of] Service Pack 21;" did not explain "what Service Pack 21 is or how it related to the software at issue in the Agreement;" and did not provide any basis for its claim that Service Pack 21 caused the damages alleged. [Doc. #15, at p. 5].

Despite defendant's arguments, the Court finds that plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." See Bell Atlantic Corp., 550 U.S. at 570. Plaintiff alleges that there was a contract between the parties, which included the provision of a "software maintenance program" to be provided by the defendant. [Doc. #1, at ¶¶ 8-11). Plaintiff alleges that defendant breached the Agreement when it delivered defective software with critical problems to plaintiff. Id. at ¶¶ 12-13. Plaintiff alleges that the defective software caused plaintiff's customers to be subject to understated finance charges. Id. at ¶ 14. As a result of the erroneous charges, plaintiff alleges that it has already paid $145,699.20 to one investor and that it will likely have to make additional payments, in the approximate amount of $3,300,000.00. Id. at ¶¶ 16-17. As currently pled, these allegations allow the Court "to draw the reasonable inference that the [defendant] is liable for the misconduct alleged." Cole v. Homier Dist. Co., Inc., 599 F.3d 856, 861 (8th Cir. 2010) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).

Defendant additionally argues that because plaintiff failed to comply with the notice and cure requirements of the Agreement, plaintiff is foreclosed from bringing a breach of contract action. Defendant cites to the "Limited Warranty" section of the Agreement, which instructs that a licensee must notify defendant "in writing of such nonconformity, error, or defect within thirty (30) days of the appearance thereof" and once notification is given, the defendant "shall at its sole and exclusive option repair or replace the Warranted Software at [defendant's] sole cost and expense." [Doc. #7-1, ¶ 8, at p. 2]. Defendant does not dispute plaintiff's allegation that it provided timely notice of the defect. Instead, defendant takes issue with plaintiff's failure to specifically plead in the complaint that it provided defendant with an opportunity to cure the alleged defect.

In response, plaintiff argues that its failure to allege that it provided defendant with the opportunity to cure is not grounds for dismissal. Furthermore, plaintiff states that it did provide defendant with an opportunity to cure, but "[d]efendant *did not respond*, in any manner, to the notice" and that "[a]lmost three months later, having provided [d]efendant with ample opportunity to cure the error and the damages resulting therefrom, [plaintiff] had no alternative but to seek remedies in Court." [Doc. #20, at p. 4] (emphasis in original).

Pursuant to Michigan law, a plaintiff's claim for beach of contract is barred if a notice and cure provision is included within a contract and the non-breaching fails to provide timely notice or fails to allow the breaching party to cure. See Convergent Group Corp. v. County of Kent, 266 F. Supp. 2d 647, 658 (W.D. Mich. 2003). In the instant case, plaintiff's complaint does not allege that it provided defendant with an

5

opportunity to cure. However, plaintiff contends in its response brief that it did, in fact, provide defendant a three-month opportunity to cure the defect, but that defendant failed to do so. While it would have been prudent for the plaintiff to allege these facts in the complaint, it is noteworthy that defendant does not dispute the facts. The plaintiff's failure to specifically plead these facts is not fatal to its breach of contract claim at this stage of the litigation. See id. at 658-659 (breach of contract claim dismissed at summary judgment stage because there was no issue of material fact regarding whether plaintiff failed to comply with the notice and cure requirements); see also Chrysler Realty Co., LLC v. Design Forum Architects, Inc., 544 F. Supp. 2d 609, 616-617 (E.D. Mich. Feb. 28, 2008) (applying Michigan law) (breach of contract claim dismissed at summary judgment stage after plaintiff attempted to argue that it was not required to provide notice to defendant).

Lastly, defendant argues that plaintiff's complaint should be dismissed because the Agreement contains a provision excluding the type of damages that plaintiff seeks and that this provision is enforceable and valid pursuant to the Uniform Commercial Code. The defendant cites to paragraph 11 of the parties' Agreement, which states that "[i]n no event shall either party be liable to the other under any theory including contract and tort . . for any indirect, special or incidental or consequential damages[.]" Defendant argues that because plaintiff alleges in its complaint that it incurred losses in its dealings with third-party investors, the damages alleged are consequential and, thus, barred by the Agreement.

At this early stage of litigation, the Court finds it inappropriate to determine whether plaintiff's allegations of damages should be classified as direct or

opportunity to cure. However, plaintiff contends in its response brief that it did, in fact, provide defendant a three-month opportunity to cure the defect, but that defendant failed to do so. While it would have been prudent for the plaintiff to allege these facts in the complaint, it is noteworthy that defendant does not dispute the facts. The plaintiff's failure to specifically plead these facts is not fatal to its breach of contract claim at this stage of the litigation. See id. at 658-659 (breach of contract claim dismissed at summary judgment stage because there was no issue of material fact regarding whether plaintiff failed to comply with the notice and cure requirements); see also Chrysler Realty Co., LLC v. Design Forum Architects, Inc., 544 F. Supp. 2d 609, 616-617 (E.D. Mich. Feb. 28, 2008) (applying Michigan law) (breach of contract claim dismissed at summary judgment stage after plaintiff attempted to argue that it was not required to provide notice to defendant).

Lastly, defendant argues that plaintiff's complaint should be dismissed because the Agreement contains a provision excluding the type of damages that plaintiff seeks and that this provision is enforceable and valid pursuant to the Uniform Commercial Code. The defendant cites to paragraph 11 of the parties' Agreement, which states that "[i]n no event shall either party be liable to the other under any theory including contract and tort . . for any indirect, special or incidental or consequential damages[.]" Defendant argues that because plaintiff alleges in its complaint that it incurred losses in its dealings with third-party investors, the damages alleged are consequential and, thus, barred by the Agreement.

At this early stage of litigation, the Court finds it inappropriate to determine whether plaintiff's allegations of damages should be classified as direct or

consequential damages or whether the limitation of liability provision in the Agreement is valid and enforceable. Plaintiff alleges that it has suffered damages as a result of the alleged software defect, which amount to over $3.4 million dollars. This allegation is sufficient to state a claim against defendant.

\* \* \*

For the reasons set forth above,

**IT IS HEREBY ORDERED** that motion to dismiss filed by defendant ISGN Corporation, for failure to state a claim for relief, pursuant to Fed.R.Civ.P. 12(b)(6) [Doc. #14] is **denied**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 28th day of July, 2014.